UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| OSWALD REYNA, | |
| Plaintiff, | Case No. 3:14-cv-00207-REB |
| vs. | **MEMORANDUM DECISION AND ORDER ON PENDING MOTIONS** |
| LARRY BEARDEN, Clinician, | |
| Defendant. | |

Pending before the Court are Defendant's Motion for Summary Judgment, Plaintiff's Motion to Compel Discovery, and Plaintiff's Motion to Amend Complaint (Dkts. 17, 20, 24.) The motions are now fully briefed. All parties have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings in this case in accordance with 28 U.S.C. § 636(c). (Dkt. 15.)

Having reviewed the record, the Court concludes that Plaintiff's Motion to Compel will be granted in part, Plaintiff's Motion to Amend will be granted in part, and Defendant's Motion for Summary Judgment will be granted. In particular, Plaintiff's retaliation claim against Defendant Bearden that is the subject of the Motion for Summary Judgment will be dismissed with prejudice, but Plaintiff will be able to proceed

on other claims against Bearden brought in the Amended Complaint. He will not be

permitted to proceed against Carlin and Gimmesen.

### DEFENDANT BEARDEN'S MOTION FOR SUMMARY JUDGMENT

#### 1. Standard of Law

Summary judgment is appropriate where a party can show that, as to a particular

claim or defense, "there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal

purposes of the summary judgment rule "is to isolate and dispose of factually

unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

It is not "a disfavored procedural shortcut," but is instead the "principal tool[] by which

factually insufficient claims or defenses [can] be isolated and prevented from going to

trial with the attendant unwarranted consumption of public and private resources." *Id*. at

327.

"[T]he mere existence of *some* alleged factual dispute between the parties will not

defeat an otherwise properly supported motion for summary judgment . . . ." *Anderson v.

Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986). Rather, there must be no *genuine*

dispute as to any *material* fact in order for a case to survive summary judgment. Material

facts are those "that might affect the outcome of the suit." *Id.* at 248. Disputes over facts

that are not material to the resolution of the motion will not preclude summary judgment.

*T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The moving party is entitled to summary judgment if that party shows that each material fact cannot be disputed. To show that the material facts are not in dispute, a party may cite to particular parts of materials in the record, or show that the adverse party is unable to produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(A) & (B). The Court must consider "the cited materials," but it may also consider "other materials in the record." Fed. R. Civ. P. 56(c)(3).

If the moving party meets its initial responsibility, then the burden shifts to the opposing party to establish that a genuine dispute as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The existence of a scintilla of evidence in support of the non-moving party's position is insufficient. Rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

The required elements of a retaliation claim are the following: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, . . . that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted). Although a "chilling effect on First Amendment rights" is enough to state an injury, *Gomez v. Vernon*, 255 F.3d 1118, 1127 (9th Cir. 2001), "bare allegations of arbitrary retaliation" are insufficient to be permitted to go forward on a retaliation claim. *Rizzo v. Dawson*, 778 F.2d 527, 532 n.4 (9th Cir. 1985).

**MEMORANDUM DECISION AND ORDER ON PENDING MOTIONS - 3**

Particularly at issue in this case is whether Plaintiff has brought forward sufficient evidence to show that the alleged retaliatory action did not advance legitimate penological goals, such as the preservation of institutional order, discipline, security, and rehabilitation of prisoners. *See Barnett v. Centoni*, 31 F.3d 813, 815-16 (9th Cir. 1994) (per curiam); *Rizzo*, 778 F.2d at 532. Federal courts "should 'afford appropriate deference and flexibility' to prison officials [when evaluating the] proffered legitimate penological reasons for conduct alleged to be retaliatory." *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995) (quoting *Sandin v. Conner*, 115 S.Ct. 2293, 2299 (1995)). "Specifically, the prison administrators cannot be held liable unless their retaliatory action did not advance legitimate goals of the correctional institution or was not tailored narrowly enough to achieve such goals." *Vance v. Barrett*, 345 F.3d 1083, 1093 (9th Cir. 2003).

While "timing can be properly considered as circumstantial evidence of retaliatory intent," there generally must be something more than timing alone to support an inference of retaliatory intent. *Pratt v. Rowland*, 65 F.3d at 808. Retaliation is not established simply by showing adverse activity by defendant *after* protected speech; plaintiff must show a nexus between the two. *See Huskey v. City of San Jose,* 204 F.3d 893, 899 (9th Cir. 2000) (a retaliation claim cannot rest on the logical fallacy of *post hoc, ergo propter hoc*, i.e., "after this, therefore because of this").

## 2.  Background

In this section, the Court has included the factual allegations submitted by the parties, as well as the factual allegations Plaintiff makes in his proposed amended

complaint and journal. The facts are set forth in a light most favorable to Plaintiff. Where disputes exist, that is noted. [1]

Plaintiff is an inmate at the Idaho Department of Correction (IDOC), who desires to be released on parole. Plaintiff completed a sentence for a sex offense in 2005. The offense was having sexual relations with a 17-year-old boy. Plaintiff is now incarcerated for drug-related crimes (not a sex offense). Prior to being paroled, Plaintiff must complete the IDOC Sex Offender Treatment Program (SOTP).

Plaintiff alleges that he suffers from various mental illnesses and personality disorders that make it difficult for him to complete the program, specifically, traumatic brain injury, bipolar disorder, post-traumatic stress disorder, and high anxiety. Plaintiff takes daily medication and also sees a psychiatrist from time to time.

The incidents at issue, alleged to have occurred at the Idaho Correctional Center – Orofino (ICIO) SOTP, are as follows. Defendant Larry Bearden was a clinician working in the SOTP. The SOTP unit required inmates to be "socially proactive" and use "pull ups" to hold each other accountable for breaking the rules. The most serious rule violations are called "cardinal" rule violations.

Plaintiff has been enrolled in the SOTP several times. In February 2013, he was issued a DOR for writing a letter to his family during a time period when he was prohibited from writing anything for 12 hours, and he was removed from the SOTP.

---

[1] The Court also notes that Plaintiff's Response to the Motion for Summary Judgment appears to be missing pages 4 through 12. However, Plaintiff has provided an extremely detailed view of what occurred during this time period in his 123-page Amended Complaint (with exhibits). (Dkt. 24.) Therefore, the Court has considered everything Plaintiff has submitted after the Motion for Summary Judgment was filed as responsive to the Motion. Should Plaintiff nevertheless believe that some important fact included on those pages is missing from the record, he may submit them with a motion to reconsider within 21 days after entry of this Order.

**MEMORANDUM DECISION AND ORDER ON PENDING MOTIONS - 5**

Plaintiff returned to the SOTP in March 2013. Plaintiff brushed up against another inmate in the showering area and was issued another DOR for that incident in April 2013. He was again removed from the program. After hearing of these violations, the Idaho Commission of Pardons and Parole (ICPP) did not change Plaintiff's parole eligibility status.

On August 9, 2013, Plaintiff returned to the SOTP once again. Clinician Bearden, a counselor in the sex offender treatment program, called Plaintiff "a lucky son-of-a-gun" and said, "Nobody gets away with it!" when he heard that Plaintiff remained parole eligible.

Clinician Bearden's job was to manage the sex offenders and help them progress by making them aware of their inappropriate words and behaviors. Bearden acknowledged that Plaintiff was a bisexual inmate and asked him to be careful not to act in a way that could be interpreted as grooming others for sexual favors. Bearden explained that Plaintiff should refrain from acting in an ingratiating manner (being overly nice to others to gain favor). Plaintiff felt threatened, harassed, and anxious when Bearden spoke with him.

Several times, Bearden told Plaintiff that he believed Plaintiff was grooming other inmates in the SOTP by being ingratiating. On August 13, 2013, Bearden said he believed Plaintiff was doing another inmate's work assignments for him. Bearden confronted Plaintiff about doing the inmate's work. Plaintiff alleges that Bearden treated Plaintiff in an angry, mocking manner when Plaintiff denied the accusation.

**MEMORANDUM DECISION AND ORDER ON PENDING MOTIONS - 6**

On August 16, 2013, Bearden would not sign off on Plaintiff's work assignment. Bearden then warned Plaintiff not to be "acting out" in the unit and said he was keeping an eye on Plaintiff. During this conversation, Bearden said he "had nothing against homosexuals and bisexuals "about eight different times. Bearden learned forward toward Plaintiff and gestured with his index finger stating, "Just between you and I, you know what I'm talking about." When Plaintiff told Bearden that he was wrong, Bearden told him to come up with a coping plan to help him manage his sexual thoughts and urges, including a time when Plaintiff was to shower alone. Bearden advised him to obtain advice from two known homosexual men in the unit to come up with the plan. Plaintiff alleges that part of his coping plan was to approach staff with questions about rumors and other things that increased his anxiety. (CD of DOR Hearing, Dkt. 19.)

Plaintiff felt harassed and singled out after his talk with Bearden. Plaintiff was especially upset that Bearden required Plaintiff to refrain from showering with other inmates, and required Plaintiff to be "prosocial" and inform other inmates in a general way that he "preferred to shower alone" so that other inmates would not go into the showers with Plaintiff. He was very embarrassed and humiliated when he had to tell other inmates that he preferred to shower alone. Several inmates noticed that Plaintiff was scared and upset. Plaintiff told the other inmates what Bearden was requiring of him. Other inmates thought Bearden's actions in asking Plaintiff to shower alone and requiring him to announce that to the others was harassment. These inmates said they did not mind showering with Plaintiff.

**MEMORANDUM DECISION AND ORDER ON PENDING MOTIONS - 7**

On August 27, 2013, Inmate Rosales entered the SOTP. Plaintiff said he knew Rosales has sex with other inmates, and Plaintiff advised him to be careful about acting out in the unit, especially in the showers. Plaintiff told Rosales about the DOR he got and the trouble it caused him. Plaintiff wrote in his journal, "I asked Rosales to sit w/ me at dinner and gave advi[c]e." (Journal, Dkt. 24-4.)

On October 9, 2013, Rosales submitted a cardinal rule violation, alleging that Plaintiff had made an inappropriate sexual comment to him (the record does not reveal the substance of the allegations). On the same day, Inmate Senesac told other inmates in the SOTP that Rosales had submitted the cardinal rule violation about Plaintiff. Inmates Robinson and Carlsen wrote up a cardinal rule violation on Senesac for disclosing that information to other inmates. Some of the inmates told Plaintiff different stories about what Rosales had included in his cardinal rule violation on Plaintiff.

On October 9, 2013, Plaintiff approached Correctional Officer Elizabeth Cox and began asking her questions about the cardinal rule violation. She told him the violation was written by only one inmate, and then stated she could not give him more information or it would be considered manipulation. Plaintiff then asked, "What happened to the bear on the desk?" This referred to an incident where Cox had been investigated by IDOC officials for moving a bear statue or memento from a shelf to a desk without authorization. (Dkt. 19.) Plaintiff told her that officials had asked him about it in the investigation, and he intimated that he had not disclosed anything that would have harmed her in the investigation. Cox felt as if Plaintiff was trying to say that he had

protected her at that time. Early in the morning of October 10, 2013, Cox reported the incident to Clinician Bearden by email. (Dkt. 17-4.)

Plaintiff alleges that, on October 10, 2013, Bearden interrogated him for two hours. Plaintiff told Bearden he began to feel confused and anxious during the interrogation, but it continued. Plaintiff felt Bearden coerced him into saying that his words and actions amounted to "criminal thinking" and a "veiled threat" against Officer Cox. Three other employees were at the meeting: Wendy Gebhart, Sergeant Hasenoerhl, and Michael Henrie. Plaintiff alleges that Gebhart also yelled at him during the meeting. The staff informed Plaintiff that he would receive a Disciplinary Offense Report ("DOR") for manipulating staff and would be removed from the SOTP. Plaintiff began to cry.

On October 15, 2013, Bearden wrote a first disciplinary offense report (DOR), alleging that Plaintiff committed the violation of manipulating staff. On October 22, 2013, Plaintiff attended the hearing on the DOR and admitted that he could see how his statements to Ms. Cox could have been construed by her as manipulation, but he also maintained that Bearden had taken advantage of Plaintiff's mental illness and manipulated him into agreeing that he was guilty. (Aff. Brian Curtis, ¶ 3, Dkt 17-6; CD of hearing, Dkt. 19) Hearing officer Brian Curtis found Plaintiff guilty of the DOR.

On October 27, 2013, Plaintiff complained to Clinician Wendy Gebhart that Bearden had been harassing him. On October 31, Warden Terema Carlin dismissed the first DOR on appeal. At some point in October 2013, Plaintiff was removed from the

**MEMORANDUM DECISION AND ORDER ON PENDING MOTIONS - 9**

SOTP. (Dkt. 24-1, p. 27.) On November 8, Plaintiff complained to Warden Terema Carlin that Bearden had been harassing him.

On November 13, 2013, Staff members Barlow, Gebhart, Bearden, Henrie, Hasenoehrl, and Downen (the "TCM" committee) held a meeting. The Notes state: "Reyna #55217 appears to be angling to be sent south and has continued the behaviors that caused him to be removed from programming. Larry [Bearden] will rewrite the DOR that was dismissed." (Dkt. 24-4, p. 16.)

On November 15, Bearden rewrote and reissued a second DOR, adding the following words to the DOR that had been dismissed: "Reyna admits he used criminal thinking of (you are the only staff that understands me) and when that did not work, he used the veiled threat of I will protect you from getting into trouble if you give me information." (Aff. Bearden, ¶ 11, Dkt. 17-3.) Plaintiff was permitted to address the DOR at the hearing. (Dkt. 19.) He denied the allegations, and again said he had been forced to "agree" with Bearden after two hours of intense interrogation, because of Plaintiff's high anxiety and confusion. Plaintiff did not mention the bear incident during the second hearing, but he did state that he had written an apology to Cox, and that Cox had responded in writing that she hadn't felt victimized.

On November 17, Plaintiff complained to Warden Carlin that Bearden had been harassing and threatening him due to his bisexual orientation. On November 19, Warden Carlin responded with the following:

> I have read your letter dated November 17, 2013. In the letter you report Clinician Bearden has targeted and harassed you. I have reviewed your letter, to include your journal excerpts, and I cannot see where your

written complaints meet the criteria for targeting or harassing. Clinician Beard is one of the facilitators for the SOTP. It is his responsibility to manage the offenders on the unit and in the program. Clinician Bearden was assess [sic] whether you are following the rules and also if you are programming appropriately.

Clinician Bearden works closely with Clinician Gebhart, PSRS Henrie, and the rest of the TCM committee on B2. Your inappropriate behavior was recognized by all of the staff and your most recent removal was a decision made by the entire team.

Your description of Clinician Bearden's behavior is of someone that is trying to bring an awareness. He was willing to tell you what the staff's concerns were and you were unable to accept his feedback. At this time I do not feel that his behavior fits the definition of harassing or targeting.

(Carlin Memo of 11/19/13, Dkt. 24-3, p. 1.)

On November 22, the same hearing officer, Brian Curtis, found Plaintiff guilty again. On December 2, 2013, Warden Carlin affirmed the DOR on appeal. On December 4, 2013, Plaintiff spoke to Carlin and notified her that she relied on the wrong policy number reference in her affirmation, but she said it didn't matter. Policy required that a different hearing officer conduct Plaintiff's second hearing, but Carlin said another hearing officer was not available. Plaintiff alleges that other hearing officers were "available" because Defendant's responses to discovery show that another hearing officer, Sergeant Schweller, was supervising the chow hall and could have traded places with Corporal Curtis to hear the DOR, or Schweller could have conducted it at another time during his shift.

On January 14, 2014, Plaintiff was briefly returned to the SOTP. On January 15, 2014, his open parole date was suspended. On January 28, Plaintiff was removed from the SOTP due to the suspension.

**MEMORANDUM DECISION AND ORDER ON PENDING MOTIONS - 11**

On January 29, 2014, Barlow, Bearden, Henrie, Lynch, and Downen met for a TCM committee meeting. There it was discussed that "Reyna was removed again for sexually acting out. His date has been pulled and he is scheduled for board in August. He has said that he may want to sign a refusal to program. If this is the case, he would be a candidate for going south." (Dkt. 24-4, p. 28.) The "sexual acting out" is not described anywhere in the record.

On April 17, 2014, Plaintiff received a DOR for physical contact. He alleges he was practicing "Reiki" touchless healing therapy on Inmate Wright, not massaging Wright's back and neck, as charged. The DOR officer, Sergeant Hartnett, found him guilty based on the "some evidence" rule, but stated that he knew what Plaintiff was doing, and if Plaintiff appealed, the DOR would be rewritten as a violation of having another inmate in his cell.

Plaintiff returned to the SOTP on June 25, 2014. On July 22, 2014, Clinician Gimmesen completed an updated psychological and SORA evaluation for Plaintiff. Gimmesen thought Plaintiff should be on Pathway 9 (six-month program) instead of Pathway 11 (nine-month program).

On July 25, 2014, Bearden prepared a Pathway Exception Request to raise Plaintiff's pathway from 11 to 13 before Plaintiff's next parole hearing. Plaintiff alleges the form contains exaggerated, misstated, and manufactured information. (Dkt. 24-1, p. 21.) On August 6, 2014, during Plaintiff's parole hearing, the ICPP told Plaintiff his Pathway had been raised from 11 to 13. Plaintiff was not granted parole, but was "flopped" for two years. (Dkt. 24-4, p. 6.)

**MEMORANDUM DECISION AND ORDER ON PENDING MOTIONS - 12**

On August 6, 2014, staff members Bearden, Gimmesen, Layne, Hasenoehrl, McIntosh, Telecky, and Downen held a TCM committee meeting. They discussed the following: "Reyna was flopped for one year. In addition, he is a PW 13. He has been progressing well in RPP and has presented all but one of his assignments. Staff does not feel that he should be removed from the unit until such time as that group is finished." (Dkt. 24-4, p. 26.)

Plaintiff asked Gimmesen why his pathway had been changed to 13. On September 4, 2014, Gimmesen told Plaintiff that there were no complaints against him, but that Gimmesen had been informed that Plaintiff was "being the same as he always was." In response, Plaintiff let loose a barrage of alarming facts that he should have brought to the attention of staff much earlier, including facts that appear to show that Plaintiff observed and was in close proximity to other inmates who were sexually acting out in the SOTP. In particular, Plaintiff told Gimmesen that they were targeting the wrong inmate for improper sexual activity—that it was another inmate (without mentioning a name) who had told Plaintiff "he felt like kissing [Plaintiff's] dick and reaching around to play with [Plaintiff's] dick," and also that Inmate "Scott" told Plaintiff, "he would do anything with [Plaintiff] for coffee and commissary." Plaintiff also mentioned that Scott had discussed Officer Elizabeth Cox while Scott was "in the shower with hard on purposely showing to [illegible] and [illegible] Cox and tell me to see him." (Plaintiff's Journal, Dkt. 24-2.)

At that time, Gimmesen told Plaintiff that he should give the names of those involved in the sexual activity to be prosocial and help them get the help they needed.

**MEMORANDUM DECISION AND ORDER ON PENDING MOTIONS - 13**

Plaintiff said that "[he] didn't want this to come back on [him], and guys should not get parole dates taken so [he] would rather not." (Plaintiff's Journal, Dkt. 24-2.)

On September 6, 2014, Plaintiff sent concern forms to Dr. Richard Craig, chief psychologist; Jeremy Clark, clinician supervisor; and Jason Kessinger, supervisor. Plaintiff complained that his pathway had been raised instead of lowered, but each supervisor affirmed the decision, although Plaintiff asserts the responses were evasive or repeated information submitted by SOTP staff. Plaintiff's grievance of October 3, 2014, complaining of this issue, was denied.

On November 4, 2014, Bearden, Gimmesen, Schmidt, Layne, Hasenoehrl, and Downen held a TCM meeting. It was mentioned that Reyna was a PW 13 and should be moved south for programming. (Dkt. 24-4, p. 27.)

In early December 2014, Plaintiff asked Clinician Rob Schmidt if Plaintiff could sign up for group therapy with another offender because Plaintiff and the offender were "related." Schmidt told Plaintiff the request was inappropriate and opined that Plaintiff was trying to exert some level of control over the other offender with the likely outcome of detriment to the well-being of the other offender. (Dkt. 24-4, p. 25.) However, Schmidt did not prepare this report until March 19, 2015. Schmidt did prepare another related report on December 8, 2014, which states that Plaintiff spoke to him both on December 2 and December 8. (Dkt. 24-4, p. 15.) Plaintiff alleges that he spoke to Schmidt only once, on December 8, and he points out that Schmidt entered different data between the December 8 report (about the December 8 incident) and the March 19 report (about an alleged December 2 incident).

**MEMORANDUM DECISION AND ORDER ON PENDING MOTIONS - 14**

### 3. Discussion

The record reflects that, on the date of Plaintiff's discussion with Correctional Officer Elizabeth Cox, she believed that Plaintiff's communication to her regarding the Rosales cardinal rule violation was questionable enough to have sent an email about it to Plaintiff's clinician, Defendant Bearden. It is undisputed that Plaintiff brought up the "bear on the desk" investigation with Officer Cox after she told him she could not reveal any more information about the cardinal rule violation report to him. This is "some evidence" that supports the DOR guilty finding. Plaintiff's dispute over his motivation for bringing up this topic at that time with Officer Cox does not overcome the fact that he did, in fact, bring up this topic when she had denied his request for her to reveal confidential information about the cardinal rule violation report.

Even if Bearden rewrote the DOR out of a retaliatory motive and Cox later responded to Plaintiff's apology by stating she didn't feel victimized, a retaliation claim cannot stand because the DOR had a legitimate penological purpose—to punish behavior that was inappropriate. Plaintiff should not have mentioned his role in the past investigation into Cox's possible misconduct at the same time he was attempting to obtain information from her about a cardinal rule violation written against him by another inmate. Plaintiff has not offered a plausible explanation why he would mention the investigation when he was in a very tight spot; objectively, it appears that he was intending to send a message to Cox that they had a special relationship of trust, and that she should favor him with the requested information in return for his having – at least in Plaintiff's mind – favored her when he was interviewed in that investigation. Because (1)

**MEMORANDUM DECISION AND ORDER ON PENDING MOTIONS - 15**

the record contains undisputed facts underlying the finding of some evidence supporting the DORs, and the disputed facts are not material to that determination and (2) there was a legitimate penological purpose for issuance of the DOR, Defendant Bearden is entitled to summary judgment on the retaliation claim. The Court also concludes that additional discovery would not change the outcome because the undisputed material facts show that Plaintiff cannot meet the element that there was no legitimate penological purpose for issuance of the second DOR.

The Court now considers whether Plaintiff's Amended Complaint should be permitted and whether Defendant should provide Plaintiff with additional discovery.

## PLAINTIFF'S MOTION TO AMEND COMPLAINT

As noted above, in response to the Motion for Summary Judgment, Plaintiff has submitted an Amended Complaint with exhibits, totaling 123 pages. Plaintiff believes additional instances of retaliation have occurred, and that Defendant Clinician Bearden, along with Clinician Byron Gimmesen and Warden Terema Carlin, have conspired together to retaliate against him. Plaintiff includes new and old instances of these prison officials' behavior that he believes are retaliatory. Plaintiff's new allegations are subject to screening by the Court under 28 U.S.C. § 1915.

The Court is required to review prisoner complaints seeking relief against a governmental entity or an officer or employee of a governmental entity to determine whether summary dismissal is appropriate. 28 U.S.C. § 1915. The Court must dismiss a complaint or any portion thereof that states a claim that is frivolous or malicious, that

fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

A complaint should also be dismissed under Rule 8 of the Federal Rules of Civil Procedure if the factual assertions in the Complaint, taken as true, are insufficient for the reviewing court plausibly "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* In other words, although Rule 8 "does not require detailed factual allegations, . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (internal quotation marks omitted). If the facts pleaded are "merely consistent with a defendant's liability," the complaint has not stated a claim for relief that is plausible on its face. *Id.* (internal quotation marks omitted).

Plaintiff now adds to his original retaliation claim other new claims that Bearden was retaliating against him (1) by reporting to the TCM committee that he had continued the behaviors that led to his removal from the SOTP; (2) by informing the TCM committee that Plaintiff had been removed due to sexual misconduct, rather than due to parole board action; and (3) manufacturing false information and using it in a Pathway Exception Request to raise Plaintiff's pathway from 11 to 13, instead of lowering it to 9, like assessment results indicated. Plaintiff also alleges that Bearden violated Plaintiff's right to be free from cruel and unusual punishment by interrogating Plaintiff until he confessed that he had manipulated Cox when Bearden knew Plaintiff suffered from a mental illness or personality disorder.

**MEMORANDUM DECISION AND ORDER ON PENDING MOTIONS - 17**

Plaintiff may not proceed on a conspiracy claim against Bearden at this time, because he does not have sufficient facts showing an agreement among the parties to violate Plaintiff's constitutional rights.  Rather, the record reflects that Bearden was Plaintiff's clinician and, as part of that job, Bearden was required to watch and evaluate Plaintiff and make reports and recommendations regarding Plaintiff's progress to the TCM committee, which in turn, would take action on the reports and recommendations. Plaintiff's allegations show that prison officials discussed and agreed upon Plaintiff's fate in the rehabilitation program, but that was simply part of their job duties, and not in itself a manifestation of a conspiracy.

Plaintiff will be permitted to proceed on the retaliation and cruel and unusual punishment claims against Bearden, to the extent that Plaintiff has met the procedural requirements to do so. The Eighth Amendment claim appears to be novel, and, if there is no similar precedent governing the claim, the Court will entertain a qualified immunity defense.

Plaintiff also alleges that Warden Carlin retaliated against him when she did nothing to remedy the wrong that a different hearing officer was not used to hear the second DOR, a situation that was contrary to prison policy. Plaintiff alleges that Warden Carlin (1) relied on the wrong policy number (a DOR dismissed by the hearing officer, not a DOR dismissed by the appellate authority), (2) wrongly stated that the different hearing officer requirement was optional by stating that the word "'shall' does not mean 'will,'" and (3) gave a completely different and wrong answer on reconsideration that no other hearing officers were available at that time, when discovery responses reflect that

another hearing officer could have left his post to trade places with Hearing Officer Brian Curtis, or they could have rearranged the DOR schedule.

Plaintiff has not provided sufficient allegations showing that his exercise of a constitutional right was the impetus for causing Defendant Carlin to give Plaintiff misinformation or to refuse to hold a third DOR hearing. There are no allegations showing that Carlin had any motive to retaliate against Plaintiff; rather, her communications seemed aimed at the legitimate penological purpose of efficiently handling DORs. And Warden Carlin had earlier granted Plaintiff's appeal and dismissed his first DOR guilt finding, which cuts against Plaintiff's allegations of a retaliatory motive. Plaintiff is also speculating that another hearing officer was "available," without any supporting allegations showing that prison officials can simply "trade places" during their shifts.

Plaintiff's allegations also fail to support a retaliation cause of action against Gimmesen. Simply because Gimmesen changed his mind about Plaintiff's pathway after Gimmesen spoke to Bearden does not mean that the change of mind was due to retaliation rather than the information provided by Bearden. In addition, it does not appear that Gimmesen recorded in Plaintiff's file the fact that Plaintiff had failed to submit a "pull up" on the inmates involved in the sexual activity and discussion that Plaintiff revealed to Gimmesen—a fact that could have greatly harmed Plaintiff's opportunities to be in the SOTP. There are insufficient facts in the record suggesting that Gimmesen had any motive to retaliate against Plaintiff.

**MEMORANDUM DECISION AND ORDER ON PENDING MOTIONS - 19**

**SUMMARY**

In summary, Plaintiff will be able to proceed on his Amended Complaint allegations against Bearden, except as to the retaliatory DOR claim that has been disposed of in the summary judgment motion and the conspiracy claim. He will not be permitted to proceed against Carlin and Gimmesen without more.

**PLAINTIFF'S MOTION TO COMPEL DISCOVERY**

Plaintiff has filed a Motion to Compel Discovery Responses, contending that Defendant Bearden has produced only a few records relating to Plaintiff's stay in the SOTP. (Dkt. 20.) Plaintiff believes that the IDOC possesses a comprehensive file encompassing all of his records pertaining to his four unsuccessful attempts in the SOTP. He believes that he saw SOTP staff with a thick SOTP file while he was he housed in the SOTP. (Motion, Dkt. 20-1.)

The Court agrees with Plaintiff that it seems unusual that there are few written records to document his behavior and progress (or lack of progress) over the many times he was housed in the SOTP. Most of the documentation consists of generalities and conclusions, with few specific facts.[2]

Defendant and his counsel assert that no comprehensive file ever existed. Each facility has its own offender file, and it has been represented that three different prison

---

[2] The record does contain some instances that could have been interpreted as ingratiating behavior, such as Plaintiff warning Rosales about sexual activity in the SOTP and inviting Rosales to sit with him at dinner. Another incident that could be interpreted as ingratiating behavior was having another inmate in his cell to perform touchless "reiki" therapy on the inmate. Yet another instance of Plaintiff attempting to form a special relationship with another inmate is Plaintiff's request to be in the same therapy group as one of his relatives. Other incidents of inappropriate SOTP behavior included in Plaintiff's journal are his multiple observations of other inmates discussing or engaging in inappropriate sexual behavior in the SOTP without Plaintiff reporting that to SOTP staff.

**MEMORANDUM DECISION AND ORDER ON PENDING MOTIONS - 20**

staff have searched each facility where Plaintiff has been housed to gather and provide the documents produced. Defendants also declare that counselors are not required to retain or archive records, but may discard them at their discretion. (Aff. Jeremy Clark, Dkt. 23-1.)

Plaintiff's discovery requests sought "assessments, test[s], exams, reports, counseling and treatment documentation, interventions, complaints, pull-ups, staff notes, disciplinary actions, and all correspondence sent or received in reference to Plaintiff." It is difficult for the Court to believe that the IDOC does not require mental health staff to document an inmate's progress in a rehabilitative program, so that multiple staff could have a comprehensive historical view of the inmate's participation in the program to help treat him, or that IDOC would not want to periodically review the records of all inmates in the SOTP to know how the program is functioning for training and supervision purposes. Nevertheless, Defendants and their counsel declare that this is how the program was run (for better or worse).

Parties to litigation cannot be made to produce what they do not have. If there was a large file of Plaintiff's SOTP history, parts of it may have been discarded. However, while three IDOC officials have searched for Plaintiff's SOTP history, Defendant Larry Bearden should disclose whether he made periodic written notations regarding what he considered to be "grooming" behavior, and, if so, whether he or someone else discarded Plaintiff's SOTP history. In addition, if he has no such written records, he should disclose his anticipated trial testimony regarding the facts supporting his observations and conclusions of ingratiating or grooming behavior.

**MEMORANDUM DECISION AND ORDER ON PENDING MOTIONS - 21**

Plaintiff's C-notes mention an MMPI-2 assessment (April 26, 2013), and a SORA

assessment (February 3, 2014), and Plaintiff alleges he had additional assessments and a

SORA in July 2014. (Dkt. 24-4.) If these relevant items have not been produced to

Plaintiff, they should be.

Plaintiff may also need to supplement his disclosures. During the August 6, 2014

parole hearing, Commissioner Scheihing asked Plaintiff "if he want[ed] to stay here

because he was sexually harassing the other inmate." (Dkt. 24-4, p. 18.) Plaintiff

responded that "he ha[d] made amends with the inmates." The hearing notes show that

Plaintiff stated that he "is trying to be more mindful of his surroundings," and "admits he

was in denial for a long time." (*Id.*) These statements may support the staff members'

assessment about Plaintiff's lack of progress in the SOTP. If he has not already done so,

Plaintiff should disclose to Defendant details about who Plaintiff was sexually harassing,

how he made amends, why Plaintiff thought he needed to be more mindful of his

surroundings, and what exactly he was in denial about.

### PLAINTIFF'S MOTION FOR APPOINTMENT OF COUNSEL

Unlike criminal defendants, prisoners and indigents in civil actions have no

constitutional right to counsel unless their physical liberty is at stake. *Lassiter v.*

*Dept. of Social Services*, 452 U.S. 18, 25 (1981). Whether a court appoints counsel for

indigent litigants is within the court's discretion. *Wilborn v. Escalderon*, 789 F.2d 1328,

1330-31 (9th Cir. 1986).

In civil cases, counsel should be appointed only in "extraordinary cases." *Id.* at

1330. To determine whether extraordinary circumstances exist, the court should evaluate

two factors: (1) the likelihood of success on the merits of the case, and (2) the ability of the plaintiff to articulate his claims pro se in light of the complexity of legal issues involved. *Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1990). Neither factor is dispositive, and both must be evaluated together. *Id*.

Applying the factors to this case, the Court finds that Plaintiff's Amended Complaint, liberally construed, states a claim upon which relief could be granted if the allegations are proven at trial. However, a review of the evidence presented by the parties in this case, in light of the difficulty of meeting the standard of law to prove a civil rights violation, shows that it is unlikely that Plaintiff will prevail. Plaintiff is performing at a much higher level than most self-represented litigants. The Court has ordered Defendants to supplement discovery, pursuant to Plaintiff's Motion to Compel Discovery Responses.

For all of the foregoing reasons, the Court will presently deny the request for appointment of Counsel. However, the Court will continue to re-evaluate the request for counsel throughout the course of the proceedings, without the need for Plaintiff to file a new motion.

## AVAILABILITY OF ALTERNATIVE DISPUTE RESOLUTION

This is a good point in time for the parties to re-evaluate why this lawsuit was filed and what could be done to resolve the problems at issue. Plaintiff requests an award of damages, as well as injunctive relief in the form of prohibiting Bearden from retaliating against him any further.

The Court is aware that the Idaho Department of Correction recently announced that it has discontinued all of its previously configured therapeutic community

**MEMORANDUM DECISION AND ORDER ON PENDING MOTIONS - 23**

rehabilitative programs and has decided to clarify its pathways to parole.[3] The record in this case reflects some odd-to-disturbing facts on both sides.[4] There is already some evidence in the record that Plaintiff had behaviors that could be construed as ingratiating or grooming, and that he had an inability (or he refused) to recognize questionable behaviors in other sex offenders who were trying to demonstrate a readiness to re-enter society. Plaintiff is encouraged to consider from an objective point-of-view whether he believes a jury would view his evidence most favorably, of the evidence of the Defendant, based upon all of the admissible evidence in the record.

Plaintiff may wish to pursue early settlement, if only to give him an opportunity for a place in a new sex offender treatment program, where an inmate's mental health concerns are taken into consideration and meaningful treatment records are maintained. The record has yet to be expanded with the facts necessary to show whether Plaintiff is entitled to relief on his new claims. Negotiation is simply one way the parties might find a common ground to problem-solve, now that new IDOC programs and philosophies are on the horizon.

---

[3] See Cynthia Sewell, *Kempf ushers in new era for Idaho Department of Correction*, Idaho Statesman, Sept. 18, 2015 (online); Betsy Z. Russell, *Idaho prisons halt treatment program that actually was leading to more recidivism*, The Spokesman-Review, Sept. 22, 2015 (online); Rebecca Boone, *Idaho to revamp prison treatment programs*, Associated Press, Sept. 18, 2015. The Court cites to these sources only to demonstrate that the IDOC has made public announcements regarding its rehabilitative programs and pathways.

[4] For example, the disturbing conversation Plaintiff had with Gimmesen apparently is not documented in Plaintiff's SOTP file (or it was discarded at some point for an unknown reason); and it appears that Plaintiff does not seem to understand the gravity of his "turning a blind eye" to the type of behavior that the SOTP is designed to address. Plaintiff continues in his position of being very adverse to a requirement to shower alone and to make an announcement that he desired to shower alone, when the type of behavior that showering alone was designed to prevent actually was occurring in the SOTP, as documented in Plaintiff's own journal.

**MEMORANDUM DECISION AND ORDER ON PENDING MOTIONS - 24**

# ORDER

**IT IS ORDERED:**

1. Defendant's Motion for Summary Judgment (Dkt. 17) is GRANTED.

2. Plaintiff's Motion for Appointment of Counsel (Dkt. 9) is DENIED without prejudice.

3. Plaintiff's Motion to Compel Discovery (Dkt. 20) is GRANTED in part, to the extent set forth above. If Defendant has any additional documents to produce and information to disclose, they shall be provided to Plaintiff **within 30 days** after entry of this Order. Plaintiff should also provide any additional documents or disclosures of information to Defendant **within 30 days** after entry of this Order.

4. Plaintiff's Motion for Leave to Amend Complaint (Dkt. 24) is GRANTED.

5. The Clerk of Court shall file a copy of the proposed Amended Complaint, with attachments, (Dkt. 24-1 through 24-4) as an Amended Complaint.

6. Defendant Bearden's Answer to the Amended Complaint shall be due **within 60 days** after entry of this Order.

7. Any additional discovery shall be completed **within 120 days** after entry of this Order.

DATED:  September 30, 2015

Honorable Ronald E. Bush
U. S. Magistrate Judge