UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| OSWALD REYNA,<br><br>                    Plaintiff,<br><br>vs.<br><br>LARRY BEARDEN, Clinician,<br><br>                    Defendant. | Case No. 3:14-cv-00207-REB<br><br>**MEMORANDUM DECISION AND ORDER** |

Plaintiff Oswald Reyna's prisoner civil rights action arises from his stay in, and removal from, the Idaho Department of Correction (IDOC) sex offender treatment program (SOTP) at the Idaho Correctional Institution–Orofino (ICI-O), a program that was a prerequisite to qualifying for release on parole. Pending before the Court is Defendant Larry Bearden's Motion to Dismiss or in the Alternative Motion for Summary Judgment. (Dkt. 31.) Also pending are Defendant's Motion for Leave to File a Supplemental Affidavit (Dkt. 34), and Plaintiff Oswald Reyna's Motion for Extension of Time to File Reply. (Dkt. 35.)

The motions are now fully briefed. All parties have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings in this case in accordance with 28 U.S.C. § 636(c). (Dkt. 15.) Having reviewed the record, the Court concludes that oral argument is unnecessary and enters the following Order.

## PRELIMINARY MOTIONS

Defendant has filed a Motion for Leave to File a Supplemental Affidavit (Dkt. 34), seeking to add to the record the Affidavit of Brenda Layne, containing additional relevant information discovered after the Motion for Summary Judgment was filed. Good cause appearing, the Motion will be granted.

Plaintiff Oswald Reyna has requested an extension of time in which to respond to Defendant's Motion for Summary Judgment. (Dkt. 35.) He has since filed his Response. Good cause appearing, the Motion will be granted, and the Response is considered timely.

## MOTION FOR SUMMARY JUDGMENT

Both parties have submitted evidence beyond the pleadings to be considered by the Court in its determination of whether the remaining claims are subject to dismissal. Therefore, the Court will decide Defendant's Motion for Summary Judgment under Rule 56, which renders moot the alternative Motion to Dismiss under Rule 12(b).

### 1. Standard of Law

Summary judgment is appropriate where a party can show that, as to a particular claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal purposes of the summary judgment rule "is to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is not "a disfavored procedural shortcut," but is instead the "principal tool[] by which factually insufficient claims or defenses [can] be isolated and prevented from going to

trial with the attendant unwarranted consumption of public and private resources." *Id*. at

327.

Rule 56(c) provides:

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

"[T]he mere existence of *some* alleged factual dispute between the parties will not

defeat an otherwise properly supported motion for summary judgment ...." *Anderson v.*

*Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986). Rather, there must be a *genuine* dispute

as to a *material* fact essential to an important element of the cause of action or defense to

survive summary judgment. Disputes over facts that are not material to the resolution of

the motion will not preclude summary judgment. *T.W. Elec. Serv., Inc. v. Pac. Elec.*

*Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The Court must consider "the cited materials," but it may also consider "other

materials in the record." Fed. R. Civ. P. 56(c)(3). The existence of a scintilla of evidence

in support of the non-moving party's position is insufficient. Rather, "there must be

evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*,

477 U.S. at 252.

Material used to support or dispute a fact should be "presented in a form that would be admissible in evidence," or it may be subject to objection. *See* Fed. R. Civ. P. 56(c)(2).[1] Affidavits or declarations submitted in support of or in opposition to a motion "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

If a party "fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the Court may consider that fact to be undisputed. Fed. R. Civ. P. 56(e)(2). The Court may grant summary judgment for the moving party "if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3). The Court may also grant summary judgment to a non-moving party, on a ground not raised by either party, or sua sponte provided that the parties are given notice and a reasonable opportunity to respond. Fed. R. Civ. P. 56(f).

The Court does not decide credibility of affiants or weigh the evidence set forth by the non-moving party. *Anderson*, 477 U.S. at 255. That means a party's or witness's sworn statement must be taken as true for purposes of summary judgment. The Court must also draw all reasonable inferences from circumstantial evidence in a light most

---

[1]      In determining admissibility for summary judgment purposes, it is the content of the evidence rather than its form that must be considered. *Fraser v. Goodale*, 342 F.3d 1032, 1036-37 (9th Cir. 2003). If the content of the evidence could be presented in an admissible form at trial, the content may be considered on summary judgment even if the evidence itself is hearsay. *Id.* (affirming consideration of hearsay contents of plaintiff's diary on summary judgment because at trial, plaintiff's testimony would not be hearsay).

favorable to the non-moving party, *T.W. Elec. Serv., Inc.*, 809 F.2d at 630-31, but it is not required to adopt unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1207-088 (9th Cir. 1988) (observing that *Matsushita Electric Industrial Company v. Zenith Radio Corporation*, 475 U.S. 574 (1986), "authorizes an inquiry on summary judgment into the 'implausibility' of inferences from circumstantial evidence …, not an inquiry into the credibility of direct evidence.").

### 2.  Background

The Court previously granted summary judgment to Defendant Bearden on the retaliation claim asserted in the original Complaint arising from Defendant Bearden's revision and resubmission of the DOR regarding the Officer Cox incident (described in the timeline below). As to that claim, the Court ruled that, even if Bearden revised and resubmitted the DOR based on a retaliatory motive, Plaintiff had no retaliation claim because the DOR had a legitimate penological purpose—that is, to bring attention to and punish behavior that was inappropriate.

Plaintiff then filed an Amended Complaint, asserting additional acts of retaliation that he gleaned from the discovery responses of Defendant. Now at issue are Plaintiff's claims that Defendant retaliated against him (1) by allegedly falsely reporting to the Team Case Management (TCM) committee that Plaintiff had continued the behaviors that led to his removal from the SOTP; (2) by informing the TCM committee that Plaintiff had been removed due to sexual misconduct, rather than due to parole board action; and (3) by manufacturing false information and using it in a Pathway Exception

Request (PER) to raise Plaintiff's pathway assessment number from 11 to 13, instead of

lowering it to 9, as assessment results indicated.

The following facts are undisputed or, if disputed, the proffered fact most

favorable to Plaintiff has been included, or both proffered facts have been noted.

| | |
|---|---|
| 02/20/13 | Plaintiff was issued a Class C Disciplinary Offense Report (DOR) for disobedience to orders for writing a letter to his family, and he was removed from the Sex Offender Treatment Program (SOTP). (Dkt. 24-4, p. 19.) |
| 03/2013 | Plaintiff returned to the SOTP. |
| 04/22/13 | Plaintiff allegedly unintentionally brushed up against another inmate in the showering area. Plaintiff was issued a Class B DOR for sexual threats and harassment for the shower incident and was removed from the SOTP program. (Dkt. 24-4, p. 19.) |
| 08/09/13 | Plaintiff returned to the SOTP. He did not lose his parole date after the showering incident DOR. Defendant Bearden expressed his disbelief that Plaintiff still had his parole date. (Dkt. 24-4, p. 21.) |
| 08/21/13 | Defendant Bearden told Plaintiff that he believed Plaintiff was grooming other inmates in the SOTP by being ingratiating. Bearden said he believed Plaintiff was doing another inmate's work assignments for him and confronted Plaintiff in an angry, mocking way. (Dkt. 24-4, pp. 7, 29.) |
| 08/16/13 | Defendant Bearden warned Plaintiff about "acting out" and told Plaintiff he was keeping an eye on him. Plaintiff denied any wrongdoing. Bearden told Plaintiff to create a coping plan to help him manage his sexual thoughts and urges. Plaintiff felt threatened and harassed by Bearden. (Dkt. 21-3, p. 28.) |
| 08/27/13 | Inmate Rosales entered the SOTP. Plaintiff said he knew Rosales has sex with other inmates, and Plaintiff advised him to be careful about acting out in the unit, especially in the showers. Plaintiff told Rosales about the DOR he got and the trouble it caused him. Plaintiff wrote in his journal, "I asked Rosales to sit w/ me at dinner and gave advi[c]e." (Dkt. 21-4. p. 3.) |

10/09/13    Rosales submitted a cardinal rule violation (a serious violation that could cause one to be removed from the SOTP), alleging that Plaintiff had made an inappropriate sexual comment to him (the record does not reveal the substance of the allegations). On that same day, Plaintiff asked Officer Elizabeth Cox about the violation. (Dkt. 21-4, p. 3.)

10/10/13    Cox reported the incident to Defendant Bearden by email. Bearden interrogated Plaintiff for a lengthy period of time about the Cox incident, despite Plaintiff's comments to Bearden that Plaintiff was becoming confused. Plaintiff finally agreed with Bearden to escape the interrogation. Three other employees were present. (Dkt. 24-2, p. 23.)

10/15/13    Defendant Bearden wrote a DOR regarding the Cox incident. Plaintiff attended the hearing on the DOR and admitted that he could see how his statements to Ms. Cox could have been construed by her as manipulation, but he also maintained that Bearden had taken advantage of Plaintiff's mental illness and manipulated him into agreeing that he was guilty. (Dkt. 3-1, p. 1; Dkt. 19, audiorecording of DOR hearing.)

10/27/13    At some point in October 2013, Plaintiff was removed from the SOTP. Plaintiff complained to Clinician Wendy Gebhart that Bearden had been harassing him. (Dkt. 24-1, p. 27; 3-1, p. 2.)

10/31/13    Warden Terema Carlin dismissed the first DOR regarding Officer Cox on appeal. (*Id.*)

11/08/13    Plaintiff complained to Warden Carlin that Bearden had been harassing him; Warden Carlin asked him to prepare a sealed letter. (Dkt. 3-1, p. 3.)

11/13/13    Staff members Barlow, Gebhart, Bearden, Henrie, Hasenoehrl, and Downen (the "TCM" committee) held a meeting. The meeting notes state: "Reyna #55217 appears to be angling to be sent south and has continued the behaviors that caused him to be removed from programming. Larry [Bearden] will rewrite the [Officer Cox] DOR that was dismissed." (Dkt. 24-4, p. 16.)

11/15/13    Bearden rewrote and reissued a second DOR on the Officer Cox incident, adding the following words to the DOR that had been dismissed: "Reyna admits he used criminal thinking of (you are the

only staff that understands me) and when that did not work, he used the veiled threat of I will protect you from getting into trouble if you give me information." (Dkt. 21-3, p. 16.)

11/17/13    Plaintiff wrote the sealed letter to Warden Carlin alleging that Bearden had been harassing and threatening him due to his bisexual orientation. (Dkt. 3-1, p. 6.)

11/19/13    Warden Carlin responded to Plaintiff with the following:

I have read your letter dated November 17, 2013. In the letter you report Clinician Bearden has targeted and harassed you. I have reviewed your letter, to include your journal excerpts, and I cannot see where your written complaints meet the criteria for targeting or harassing. Clinician Beard is one of the facilitators for the SOTP. It is his responsibility to manage the offenders on the unit and in the program. Clinician Bearden was assess [sic] whether you are following the rules and also if you are programming appropriately. Clinician Bearden works closely with Clinician Gebhart, PSRS Henrie, and the rest of the TCM committee on B2. Your inappropriate behavior was recognized by all of the staff and your most recent removal was a decision made by the entire team.

Your description of Clinician Bearden's behavior is of someone that is trying to bring an awareness. He was willing to tell you what the staff's concerns were and you were unable to accept his feedback. At this time I do not feel that his behavior fits the definition of harassing or targeting. (Dkt. 24-3, p. 1, Carlin Memo of 11/19/13.)

11/22/2013   Plaintiff was found guilty of the revised DOR for manipulating staff regarding C/O Cox. He was not given any further sanction, as Officer Curtis noted that he had been removed from the SOTP for the offense. The DOR was affirmed by Warden Carlin on December 2, 2013.

01/14/14    Plaintiff briefly returned to the SOTP.

01/15/14    Plaintiff's open parole date was suspended. (Dkt. 3-1, p. 11.)

01/28/14    Plaintiff was removed from the SOTP due to the parole date suspension.

01/29/14        Defendant informs other clinicians in a SOTP clinicians' meeting
                that Plaintiff was removed from the SOTP for sexually acting out.
                (Dkt. 24-4, p. 28.)

04/22/14        During a time period when Plaintiff was not housed in the SOTP,
                Officer Aaron May issued Plaintiff a DOR for massaging another
                inmate. Plaintiff alleges he was practicing "Reiki" touchless healing
                therapy on Inmate Wright, not massaging Wright's back and neck,
                as charged. The DOR officer, Sergeant Hartnett, found him guilty
                based on the "some evidence" rule, but stated that he knew what
                Plaintiff was doing, and if Plaintiff appealed, the DOR would be
                rewritten as a violation of having another inmate in his cell. (Dkt.
                24-3, p. 5.)

05/28/14        Plaintiff filed the civil rights complaint against Bearden and others
                in this action.

06/25/14        Plaintiff returned to the SOTP for programming.

07/22/14        Clinician Gimmeson completed an updated psychological and
                SORA evaluation for Plaintiff. Gimmeson thought Plaintiff should
                be on Pathway 9 (six-month program) instead of Pathway 11 (nine-
                month program). Plaintiff told Gimmeson that he filed a lawsuit
                against Bearden and wanted a different clinician to supervise him.

07/2014         Gimmeson (on behalf of Bearden and himself) prepared and/or sent
                documentation and correspondence to Brenda Layne, so that she
                could prepare a Pathway Exception Request (PER) to raise
                Plaintiff's pathway from 11 to 13 before Plaintiff's next parole
                hearing. Plaintiff alleges the form contains exaggerated, misstated,
                and manufactured information. (Dkt. 24-1, p. 21.)

07/24/14        Brenda Layne prepared, and Clinician Gimmeson reviewed, the PER
                for Plaintiff's change, based on the information Gimmeson had
                provided her.

07/25/14        Layne completed the PER and submitted it to Aaron Krieger, stating
                that Clinicians Bearden and Gimmeson recommended that Plaintiff
                be moved from a rehabilitative pathway 9 at the northern Idaho ICI-
                O facility to a pathway 13, to receive SOTP treatment at ISCI, a
                facility in southern Idaho. (Dkt. 34-1, p. 5.) Another system note
                authored by Krieger that contains roughly the same information but
                also additional information that "Clinician Bearden would like

[Reyna's] pathway changed"; the note contains Larry Bearden's name at the end of the note, not Gimmeson's. (Dkt. 37-1, p. 28.) Clinician Gebhart states that it was Bearden, with agreement of Petitioner's other clinicians, who requested the PER. (Dkt. 31-4, p. 4.)

08/06/14   During Plaintiff's parole hearing, the ICPP told Plaintiff his Pathway may be raised from 11 to 13, but no final decision had been made. Plaintiff was not granted parole, but was "flopped" for two years, with the ICPP noting its concern over his DOR history. (Dkt. 24-4, p. 17-18.)

08/06/14   Staff members Bearden, Gimmeson, Layne, Hasenoehrl, McIntosh, Telecky, and Downen held a TCM committee meeting. They discussed the following: "Reyna was flopped for one year. In addition, he is a PW 13. He has been progressing well in RPP and has presented all but one of his assignments. Staff does not feel that he should be removed from the unit until such time as that group is finished." (Dkt. 24-4, p. 26.)

09/04/14   When Plaintiff asked Gimmeson about the change, Gimmeson told Plaintiff that there were no complaints against him, but that Gimmeson had been informed that Plaintiff was "being the same as he always was." In response, Plaintiff let loose a barrage of alarming facts that he should have brought to the attention of staff much earlier, including facts that appear to show that Plaintiff observed and was in close proximity to other inmates who were sexually acting out in the SOTP. In particular, Plaintiff told Gimmeson that they were targeting the wrong inmate for improper sexual activity—that it was another inmate (without mentioning a name) who had told Plaintiff "he felt like kissing [Plaintiff's] dick and reaching around to play with [Plaintiff's] dick," and also that Inmate "Scott" told Plaintiff, "he would do anything with [Plaintiff] for coffee and commissary." Plaintiff also mentioned that Scott had discussed Officer Elizabeth Cox while Scott was "in the shower with hard on purposely showing to [illegible] and [illegible] Cox and tell me to see him." (Dkt. 24-2, pp. 20-21, Plaintiff's Journal.)

09/06/14   Plaintiff sent concern forms to Dr. Richard Craig, chief psychologist; Jeremy Clark, clinician supervisor; and Jason Kessinger, supervisor. Plaintiff complained that his pathway had been raised instead of lowered, but each supervisor affirmed the decision, although Plaintiff asserts the responses were evasive or simply repeated

information submitted by SOTP staff. Plaintiff's grievance of October 3, 2014, complaining of this issue, was denied. (Dkt. 21-3, p. 22-23.)

09/12/14      Plaintiff is removed from the SOTP. (Affidavit of Clinician Wendy Gebhart, Dkt. 31-4, p. 5.)

10/17/14      The Court issued an Initial Review Order in this civil rights case, permitting Plaintiff to proceed against Bearden only.

10/31/14      Clinician Schmidt reported: "Mr. Reyna came to office by appointment and presents as cooperative during the interview with conversation that indicates that he is fearful and paranoid about staff being out to get him. Mr. Reyna has poor judgment regarding how others view his behaviors and that he has been considered as a predator by staff and can't figure out why. We discussed how Mr. Reyna's focus on his being misunderstood and mislabeled is causing him stress and creating a hangup to working with staff…. Mr. Reyna reports that other clinicians and counselors do not listen like this clinician and he looks forward to working together." (Dkt. 37-1, p. 37.)

Clinician Schmidt's assessment was: "Mr. Reyna is trying to learn more about this clinician with no real precipitating event that would trigger his persistence in having an appointment. Mr. Reyna appeared to want to vent and get this clinician to understand his problems, possibly for secondary gain." (*Id*.)

11/04/14      Bearden, Gimmeson, Schmidt, Layne, Hasenoehrl, and Downen held a TCM meeting. It was mentioned that Reyna was a PW 13 and should be moved south for programming. (Dkt. 24-4, p. 27.)

11/25/14      Plaintiff submitted a concern form to Clinician Schmidt asking if Plaintiff could sign up for Schmidt's MH group and if Plaintiff could sign up with another inmate, an alleged relative of Plaintiff. (Dkt. 37-1, p. 39.) Schmidt states he saw Plaintiff in passing on 12/02/04, and they discussed the request informally outside of Schmidt's office. (This incident was not documented by Schmidt in a medical record until 03/19/15, but it was mentioned in a clinical contact note of December 8, 2014. Plaintiff asserts he saw Schmidt only once, on 12/08/14. (See below.))

| | |
|---|---|
| 12/01/14 | Summons served on Defendant's counsel at the Idaho Attorney General's office. |
| 12/08/14 | Schmidt wrote a clinical contact record note indicating that Plaintiff was seen in the office at Plaintiff's request. Plaintiff "reported continued frustrations about his being labelled as 'a predator' by staff, other offenders." Schmidt discusses his request of taking the MH group with the other offender, telling Plaintiff that usually is not permitted. (Plaintiff alleges that he discussed this matter only once with Defendant, not twice, as Schmidt says.) (Dkt. 37-1, p. 38.) |
| 12/19/14 | Idaho Deputy Attorney General Nancy Bishop filed an Answer on behalf of Defendant Bearden. |
| 02/10/15 | Plaintiff was transferred to the ISCC facility in southern Idaho. (Dkt. 17-3.) |
| 03/2015 | In an Affidavit filed by Idaho Deputy Attorney General Sarah Millar, Defendant Bearden claimed he was first made aware of the Complaint on this date, even though his counsel filed an answer to the complaint three months earlier. (Dkt. 31-3, p.2.) |
| 05/2015 | Plaintiff entered the SOTP at ISCC. |

## 3.  Retaliation Claims

### A.    Standard of Law

The required elements of a retaliation claim are the following: "(1) An assertion

that a state actor took some adverse action against an inmate (2) because of (3) that

prisoner's protected conduct, . . . that such action (4) chilled the inmate's exercise of his

First Amendment rights, and (5) the action did not reasonably advance a legitimate

correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote

omitted). Although a "chilling effect on First Amendment rights" is enough to state an

injury, *Gomez v. Vernon*, 255 F.3d 1118, 1127 (9th Cir. 2001), "bare allegations of

arbitrary retaliation" are insufficient to state a claim. *Rizzo v. Dawson*, 778 F.2d 527, 532 n.4 (9th Cir. 1985).

Particularly at issue in this case is whether Plaintiff has brought forward sufficient evidence to show that the alleged retaliatory action did not advance legitimate penological goals, such as the preservation of institutional order, discipline, security, and rehabilitation of prisoners. *See Barnett v. Centoni*, 31 F.3d 813, 815-16 (9th Cir. 1994) (per curiam); *Rizzo*, 778 F.2d at 532. Federal courts "should 'afford appropriate deference and flexibility' to prison officials [when evaluating the] proffered legitimate penological reasons for conduct alleged to be retaliatory." *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995) (quoting *Sandin v. Conner*, 115 S.Ct. 2293, 2299 (1995)). "Specifically, the prison administrators cannot be held liable unless their retaliatory action did not advance legitimate goals of the correctional institution or was not tailored narrowly enough to achieve such goals." *Vance v. Barrett*, 345 F.3d 1083, 1093 (9th Cir. 2003).

While "timing can be properly considered as circumstantial evidence of retaliatory intent," there generally must be something more than timing alone to support an inference of retaliatory intent. *Pratt v. Rowland*, 65 F.3d at 808. Retaliation is not established simply by showing adverse activity by defendant *after* protected speech; plaintiff must show a nexus between the two. *See Huskey v. City of San Jose,* 204 F.3d 893, 899 (9th Cir. 2000) (a retaliation claim cannot rest on the logical fallacy of *post hoc, ergo propter hoc*, i.e., "after this, therefore because of this").

**B.** *Discussion of Pre-Lawsuit Retaliation Claims*

Plaintiff has not shown that the alleged retaliatory acts of November 13, 2013 (reporting privately to the TCM committee that Plaintiff continued behaviors that caused him to be removed from programing) and January 29, 2014 (reporting privately to the TCM committee that Plaintiff was removed from programing for sexually acting out) were in response to Plaintiff's exercise of a constitutional right. Rather, Plaintiff himself asserts that these acts were in response to Defendant's disbelief in learning that Plaintiff had not lost his parole date as a result of the shower incident DOR. Similarly, because Plaintiff had no knowledge of Defendant's comments made in a private staff meeting until he learned of these facts through discovery many months later, he cannot meet the element that his exercise of a constitutional right was chilled by Defendant's words to other clinicians in the meeting. Because Plaintiff has not come forward with sufficient evidence supporting these two elements of the claim, it is subject to summary judgment.

Plaintiff also cannot support the final element required for a retaliation claim—lack of a penological reason behind Defendant's words and actions. Even if Defendant acted in retaliation for something Plaintiff had said—such as Plaintiff's reporting to the Warden that he believed Defendant was harassing him—Bearden's acts advanced a legitimate penological goal. It is uncontested that Bearden had the responsibility to manage the offenders in the program, assess whether they were following the rules and programming appropriately, and bring inappropriate behavior to their attention. The record is replete with instances where Plaintiff's words and actions could be viewed as attempting to ingratiate himself to other inmates and staff, being involved in various

activities or conversations that could lead to sexual activities, and failing to report other inmates' inappropriate behaviors as the program required. While the Officer Cox DOR was for manipulation of staff, the root of the entire Officer Cox incident was that Inmate Rosales had reported to Cox that Plaintiff had violated a cardinal rule by making an inappropriate sexual remark to him, and Plaintiff was trying to find out information from Cox about the rule violation report. Because Defendant Bearden's words and actions served a legitimate penological goal, the claim is subject to summary judgment.

### C.   *Discussion of Post-Lawsuit Retaliation Claims*

The third retaliation claim is that, in July 2014, Defendant Bearden prepared documentation and correspondence containing exaggerated, misstated, and manufactured information to have a Pathway Exception Request (PER) submitted to raise Plaintiff's pathway from 11 to 13 before Plaintiff's next parole hearing, which would cause him to be removed from the SOTP.

Plaintiff alleges that on July 22, 2014, he told Clinician Gimmeson in the SOTP that he had filed a lawsuit against Defendant Bearden and did not want Bearden to be his clinician any more. Plaintiff has provided no facts showing that Gimmeson reported the existence of the lawsuit to Defendant. Plaintiff relies on timing alone for his allegation that the lawsuit was the protected activity that caused Bearden to retaliate by recommending that, although Plaintiff qualified for a pathway 9, other factors caused him to be rated for a pathway 13, which meant he would be removed from the ICI-O SOTP program and sent to a southern Idaho facility for a lengthier SOTP. Though Defendant Bearden denies that he was the person who actually prepared the paperwork for the

change, and he points to the fact that other clinicians and Dr. Craig Beaver approved the change, the record contains sufficient evidence from which a jury could find that Defendant's expressed opinion about Plaintiff's alleged continued sexual behaviors was the impetus for the change.

Once again, however, even if Plaintiff could meet all of the other elements of a retaliation claim (for example, if he had evidence that Gimmeson told Bearden about the lawsuit), he cannot meet the element of showing lack of a penological interest in the recommendation to move Plaintiff to a lengthier pathway to enter a program at a different facility.

The presence of a legitimate penological goal is supported by Dr. Beaver's opinion. When Plaintiff wrote a grievance to report that Defendant Bearden was harassing him, Dr. Beaver notified Plaintiff that it was he, Dr. Beaver, who made the ultimate determination of where Plaintiff should be placed, and that he had approved the recommended change to pathway 13. Dr. Beaver explained in the grievance appeal response:

> A Static 99R score serves as the base for a risk assessment but it is not the end-all since in many cases additional risk factors become known. Generally, a Static 99R score of 2 would result in a lower pathway but in your case additional information suggests a substantially higher risk. These factors include a high risk LSI-R score and behaviors observed by other staff that indicated a pattern of "grooming" other offenders.

(Dkt. 29-2, p. 10.)

Because Plaintiff has brought forward insufficient evidence showing that a legitimate penological interest was not being served by the change, his retaliation claim is subject to summary judgment.

**4.      Eighth Amendment Claims**

Plaintiff's next claims that Defendant Bearden, a trained clinician, knew that Plaintiff suffered from several mental illness conditions or disorders, and yet verbally and emotionally abused Plaintiff by interrogating him for hours about the Officer Cox incident, causing exacerbation of Plaintiff's symptoms. During the interrogation, Plaintiff says that he eventually agreed with Defendant because he became confused and simply wanted Defendant to stop interrogating him.

**A.      *Standard of Law***

In § 1983 actions, the doctrine of qualified immunity protects state officials from personal liability for on-the-job conduct so long as the conduct is objectively reasonable and does not violate clearly-established federal rights. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citations omitted). A qualified immunity analysis consists of two prongs: (1) whether the facts as alleged by plaintiff establish a violation of a constitutional right, and (2) whether that right was clearly established given the state of the law at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009), citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001). As to the first prong, the court considers whether, "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show the [defendant's] conduct violated a constitutional right." *Saucier*, 533 U.S. at 201.

As to the second prong, whether the law was clearly established, a court need "not require a case directly on point"; however, "existing precedent must have placed the statutory or constitutional question beyond debate," for a court to conclude that qualified immunity does not apply. *Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2083 (2011); *Stanton v. Simms*, 134 S.Ct. 3, 5 (2013). The "dispositive inquiry is whether it would [have been] clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202. The United States Supreme Court has clarified: "We have repeatedly told courts ... not to define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023 (2014) (internal citations and punctuation omitted). More recently, the United States Supreme Court held that qualified immunity applies where no prior precedent "squarely governs" the facts at hand. *Mullenix v. Luna*, 136 S. Ct. 305, 310 (2015).

If the public official can demonstrate he did not know, nor should he have known, the relevant legal standard, then qualified immunity applies. *Harlow*, 457 U.S. at 819. "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments," and "protects 'all but the plainly incompetent or those who knowingly violate the law.'" *al-Kidd*, 131 S.Ct. at 2085 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

Courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236. The qualified immunity inquiry

is "a pure question of law." *Elder v. Holloway*, 510 U.S. 510, 514 (1994). However, "under either prong, courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment." *Tolan v. Cotton*, 134 S.Ct. 1861, 1866 (2014).

To state a claim under the Eighth Amendment, a plaintiff must show that he is incarcerated "under conditions posing a substantial risk of serious harm," or that he has been deprived of "the minimal civilized measure of life's necessities." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal citation omitted). An Eighth Amendment claim requires a plaintiff to satisfy "both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012).

As to the objective standard, verbal harassment, abuse and threats, without more, are not sufficient to state a constitutional deprivation under § 1983. *Oltarzewski v. Ruggiero*, 830 F.2d 136 (9th Cir. 1987) (allegations that correctional counselor told plaintiff that he would transfer him to a higher custody status unit if he tried to go to the law library and that he would be sorry if he filed a class action suit were not actionable under § 1983).

However, inmates have an Eighth Amendment right to be free from "calculated harassment unrelated to prison needs." *Hudson v. Palmer*, 468 U.S. 517, 530 (1984). The United States Supreme Court has reiterated that the Eighth Amendment should be reserved for serious incidents causing "unnecessary and wanton infliction of pain," where such pain has been inflicted by prison officials' "deliberate indifference to the inmates' health or safety." *Hope v. Pelzer*, 536 U.S. 730, 736-37 (2002) (internal citations and

punctuation omitted. Further, in *McKune v. Lile*, 536 U.S. 24, 41 (2002), the Court noted that, in determining whether a constitutional claim lies, "[c]ourts must decide whether the [facts] are closer to the physical torture against which the Constitution clearly protects or the *de minimis* harms against which it does not."

As to the subjective factor, to violate the Eighth Amendment, a prison official must act in a manner that amounts to deliberate indifference, which is "more than ordinary lack of due care for the prisoner's interests or safety," but "something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. Stated another way, deliberate indifference exists when an "official knows of and [recklessly] disregards an excessive risk to inmate health or safety," which means that an official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 838.

### B. Discussion

The Court finds this a novel claim upon which there is no clearly established law that "squarely governs."[2] In its review of the law, the Court found one other similar

---

[2]     The Court declines Defendant's invitation to treat this claim simply as an instance of verbal abuse, because of Plaintiff's additional allegations that this was his own clinician who was trained in the mental health field and who knew of Plaintiff's particular mental health conditions. If treated simply as a verbal abuse claim, it fails to state a claim upon which relief can be granted. It is clear that "[v]erbal harassment or abuse ... is not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983." *Oltarzewski v. Ruggiero,* 830 F.2d 136, 139 (9th Cir. 1987).

Specifically, verbal harassment, standing alone, does not violate the Eighth Amendment proscription against cruel and unusual punishment. *Keenan v. Hall*, 83 F.3d 1083, 1092 (9th Cir. 1996) ("verbal harassment generally does not violate the Eighth Amendment," especially where there was no evidence "that these comments were unusually gross even for a prison setting").

claim, filed in a United States District Court in California, entitled *Young v. Franco*, No.

C06-7861 CRBPR, 2007 WL 926497 (N.D. Cal. Mar. 26, 2007). In that case, the

plaintiff, who was a prisoner and mental health patient, alleged that several correctional

officials persistently harassed him despite their knowledge that he had mental health

history of depression, poor coping skills, and anger management issues. The court

permitted the plaintiff to proceed with his complaint, reasoning:

> Allegations of threats and harassment fail to state a claim cognizable under 42 U.S.C. § 1983. *See Freeman v. Arpaio*, 125 F.3d 732, 738 (9th Cir. 1997) [*overruled on other grounds by Shakur v. Schriro*, 514 F.3d 878, 885 (9th Cir. 2008)] (verbal harassment and abuse); *Gaut v. Sunn*, 810 F.2d 923, 925 (9th Cir.1987) (threats).... But harassment coupled with conduct implicating the Eighth Amendment's proscription against cruel and unusual punishment may indeed present a claim cognizable under § 1983. *See Hudson v. Palmer*, 468 U.S. 517, 528-30 (1984) (malicious cell searches and calculated harassment unrelated to prison needs may implicate 8th Amendment's protection against cruel and unusual punishment); *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981) (harassment with regards to medical problems cognizable if it constitutes deliberate indifference). Liberally construed, plaintiff's allegations implicate the Eighth Amendment's proscription against cruel and unusual punishment, especially in view of his known mental health needs, and accordingly will be served on the named defendants.

*Young v. Franco*, 2007 WL 926497, at *1. The complaint in *Young v. Franco* was later

dismissed for failure to exhaust administrative remedies, and, thus, the plaintiff's

allegations were never addressed on the merits.

The Court has not found a case of precedential value that could be considered

clearly-established law governing Plaintiff's claim. Part of Defendant Bearden's job

duties were to hold Plaintiff to a high standard of behavior to teach him the principles he

needed to be successful when leaving the SOTP (see warden's letter); whether Defendant

crossed the line from harsh questioning to harassment in a mental health setting cannot be measured against any similar precedent. Therefore, qualified immunity is appropriately applied, and summary judgment in Defendant's favor will be granted.

## 5.    Conclusion

For the reasons set forth herein above, Plaintiff's claims are subject to summary judgment, and the Court does not reach Defendant's alternative arguments. It is worth noting in that context that the Idaho Department of Correction is reevaluating all of its rehabilitative programs against empirical data calling into question programs focused on harsh corrective measures rather than modeling and teaching mutual respect and human dignity. The Idaho Department of Correction announced last year that it had discontinued all of its so-called "shame-based" therapeutic community rehabilitative programs and has determined that it would clarify its pathways to parole.[3] The Court also notes that Plaintiff recently has filed a change of address notice indicating that he is now on parole.

### ORDER

**IT IS ORDERED:**

1.  Defendant Larry Bearden's Motion to Dismiss or in the Alternative Motion for Summary Judgment (Dkt. 31) is GRANTED.

---

[3]      See Cynthia Sewell, *Kempf ushers in new era for Idaho Department of Correction*, Idaho Statesman, Sept. 18, 2015 (online); Betsy Z. Russell, *Idaho prisons halt treatment program that actually was leading to more recidivism*, The Spokesman-Review, Sept. 22, 2015 (online); Rebecca Boone, *Idaho to revamp prison treatment programs*, Associated Press, Sept. 18, 2015. The Court cites to these sources only to demonstrate that the IDOC has made public announcements regarding changes to its rehabilitative programs and pathways.

2.  Defendant's Motion for Leave to File a Supplemental Affidavit (Dkt. 34) is

    GRANTED.

3.  Plaintiff Oswald Reyna's Motion for Extension of Time to File Reply

    [response] (Dkt. 35) is GRANTED. The Court has considered the Response in

    making its decision.

DATED:  September 29, 2016

_____
Honorable Ronald E. Bush
Chief U. S. Magistrate Judge